IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **WINDY R.**[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:21cv00443 |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Windy R. ("Windy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Windy alleges that the Administrative Law Judge ("ALJ") erred by failing to properly weigh the opinions of her treating physicians and failing to properly explain how he reached her RFC in light of conflicting medical opinions. I agree that the ALJ did not perform a proper function-by-function analysis. Accordingly, I **RECOMMEND GRANTING in part** Windy's Motion for Summary Judgment (Dkt. 12), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 14), and **REMANDING** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

support the Commissioner's conclusion that Windy failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). I find that remand is appropriate here because the ALJ's opinion fails to explain how he reached his RFC in light of Windy's severe impairments and conflicting medical opinions.

## CLAIM HISTORY

Windy filed for a period of disability and DIB in April 2019, claiming her disability began on January 1, 2017,[3] due to degenerative disc disease, nerve issues in her back, diabetes, breathing problems, high blood pressure, anxiety, kidney disease, and muscle spasms. R. 70, 85. Windy's date last insured is September 30, 2019; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 150; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Windy's applications at the initial and reconsideration levels of administrative review. R. 70–82, 85–97. On November 17, 2020, ALJ Michael Dennard held a hearing to consider Windy's claims for a period of disability and DIB. R. 38–67. Counsel represented Windy at the hearing, which included testimony from vocational expert Mark Hileman. On

---

[3] At her hearing with the ALJ, Windy amended her alleged onset date to January 22, 2019. R. 45.

December 3, 2020, the ALJ entered his decision analyzing Windy's claims under the familiar five-step process[4] and denying her claim for benefits.[5] R. 10–25.

The ALJ found that Windy was insured at the time of the alleged onset and suffered from the severe impairments of lumbar degenerative disc disease, diabetes mellitus with neuropathy, cirrhosis of the liver, obesity, hypertension, and chronic obstructive pulmonary disease. R. 12. Regarding her mental impairments, Windy's anxiety and depression were non-severe. R. 13. The ALJ found that Windy had no limitations in the broad functional areas of understanding, remembering, or applying information, or interacting with others. R. 13–14. The ALJ found that Windy was mildly limited in the broad functional areas of concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 14–15.

The ALJ determined that Windy's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 16. The ALJ specifically considered Social Security Ruling ("SSR") 14-2p (diabetes mellitus), listing 1.04 (compromise of a nerve root or the spinal cord), listing 3.02 (chronic respiratory disorders), listing 4.00(H)(1) (hypertension), listing 5.05 (chronic liver disease), and listing 11.14 (peripheral neuropathy).

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Windy was 46 years old on her alleged onset date, making her a younger person age 45–49 under the Act. R. 24.

4

The ALJ concluded that Windy retained the residual functional capacity ("RFC") to perform sedentary work. R. 18. Windy can occasionally operate bilateral foot controls, climb ramps and stairs, balance, stoop, kneel, and crouch. Id. Windy can never climb ropes, ladders, or scaffolds, or crawl. Id. Windy can withstand occasional work at unprotected heights, around hazardous machinery, in humidity and wetness, around dust, odors, fumes, and pulmonary irritants, in extreme hot and cold temperatures, and around vibrations. Id. The ALJ determined that Windy was unable to perform her past relevant work as a license clerk, title search clerk, or court clerk but could perform jobs that exist in significant numbers in the national economy, such as addressing clerk, printed circuit board touch-up screener, and product assembler. R. 23–25. Thus, the ALJ determined that Windy was not disabled. R. 25. Windy appealed the ALJ's decision, and the Appeals Council denied her request for review on June 10, 2021. R. 1–3.

## ANALYSIS

Windy alleges that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to properly weigh the opinion evidence of her providers and failed to use a proper function-by-function analysis in light of her severe impairments.

**A. Medical History Overview**

1. Medical Treatment

Windy has a history of degenerative disc disease, nerve issues in her back, diabetes, breathing problems, high blood pressure, anxiety, kidney disease, and muscle spasms. R. 70, 85. Windy "claims disability stemming primarily from her persistent low back pain, which radiates into her right hip, leg, and foot, as well as neuropathy caused by her diabetes." Pl.'s Br. at 3, Dkt. 13. During the relevant period, Windy saw several healthcare providers, including her primary care provider, Richard Card, II, D.O., and her pain management specialist, Tejal Raju, M.D.

Windy often complained to her providers of pain that began in her back and radiated into other extremities. R. 328, 363, 367, 376, 384, 494, 504, 525, 530, 542, 620. Windy presented with limited range of motion and tenderness at some appointments. R. 303, 504, 621.

To help with her pain, doctors gave Windy injections and medications, used osteopathic manipulation techniques, and prescribed physical therapy. R. 303, 308, 312–13, 363–401 (physical therapy notes), 494, 508, 531. In June 2019, Dr. Raju performed a radiofrequency facet denervation, after which Windy reported a 50% relief of her pain. R. 539, 542. However, Windy's pain returned several weeks after the procedure. R. 620.

A January 2017 x-ray of Windy's lumbar and thoracic spine showed unremarkable findings. R. 427–28. An April 2017 x-ray of Windy's left hip was normal. R. 306. A May 2017 CT scan of Windy's lumbar spine showed findings compatible with osteitis condensans ilii.[6] R. 316. A February 2019 MRI of Windy's lumbar spine showed degenerative disc disease at the L3-L4 level. R. 528. Dr. Raju stated that this "MRI is benign and does not explain [Windy]'s pain." Id.

2. Medical Opinions

In September 2019 and December 2019, respectively, state agency psychologist consultants Howard Leizer, Ph.D., and William Carne, Ph.D., found that Windy's anxiety was a non-severe impairment. R. 76, 92. The ALJ found these opinions persuasive. R. 22. The ALJ reasoned that the record supported non-severe impairment findings because "[e]xaminations

---

[6] "Osteitis condensans ilii (OCI) is a self-limiting condition marked by sclerosis of the iliac bone, found either incidentally on imaging in asymptomatic patients or those presenting with lower back pain. Given the non-progressive nature of OCI, the prognosis is highly favorable, and conservative therapy is preferred. This includes non-steroidal anti-inflammatory drugs (NSAIDs), physical therapy, and rest." Peter M. Williams & Doug W. Byerly, *Osteitis Condensans Ilii*, NIH, https://www.ncbi.nlm.nih.gov/books/NBK551569/ (last updated June 5, 2022).

include negative mental status findings throughout the record and no history of mental health counselor services." Id.

In September 2019, state agency medical consultant Gene Godwin, M.D. reviewed the record and found that Windy could lift/carry 20 pounds occasionally and 10 pounds frequently, could stand/walk for six out of eight hours, could sit for six out of eight hours, could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, and could never crawl or climb ropes, ladders, or scaffolds. R. 78–79. The ALJ found this opinion "less persuasive, given the light exertional residual functional capacity, as records reflect further exertional limits." R. 22.

In December 2019, state agency medical consultant David Bristow, M.D. reviewed the record and found that Windy could lift/carry 20 pounds occasionally and 10 pounds frequently, could stand/walk for four out of eight hours, could sit for six out of eight hours, could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, and could never crawl or climb ropes, ladders, or scaffolds. R. 93–94. The ALJ found this opinion "partially persuasive, as the record notes radiological and physical examination findings that support a more restrictive exertional capacity[.]" R. 22–23.

On September 24, 2020, and October 7, 2020, respectively, Dr. Raju and Dr. Card both found that Windy could sit for less than two hours and stand/walk for less than two hours in an eight-hour day. R. 729, 731. The doctors further concluded that Windy could never lift/carry any weight. Id. The doctors stated that Windy's pain would frequently interfere with her attention and concentration and that she would miss work more than four times a month as a result of her impairments or treatment. Id. Dr. Card related his opinions back to January 1, 2017. R. 732. Dr. Raju related her opinions back to January 22, 2019. R. 730. The ALJ found Dr Card's opinions

7

to be "less persuasive" and Dr. Raju's opinions to "lack[] persuasiveness." R. 23. The ALJ reasoned that the opinions were not supported by the record because the record indicates "relatively conservative medical treatment, prescribed medications, and no acute medical findings." Id.

### B. Function-by-Function Analysis

Windy argues that the ALJ fails "to explain how he came to the conclusion that [Windy] could perform the exertional activities necessary to engage in sedentary work." Pl.'s Br. at 9, Dkt. 13. In support, Windy notes that the ALJ never analyzed her ability to lift, carry, sit, stand, or walk. Id. Windy also states that the ALJ did not explain "how he resolved the conflicting evidence from the state agency consultants and medical care providers" regarding Windy's exertional and non-exertional limitations. Id. at 10. The Commissioner counters that the ALJ performed a satisfactory function-by-function analysis. Def.'s Br. at 14, Dkt. 15.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material

8

inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision does not include the narrative discussion required by SSR 96-8p and does not contain sufficient information to allow meaningful review. The ALJ found that Windy had the severe impairments of lumbar degenerative disc disease, diabetes mellitus with neuropathy, cirrhosis of the liver, obesity, hypertension, and chronic pulmonary disease. R. 12. However, the ALJ never discussed how these severe impairments were addressed by Windy's RFC. In fact, the ALJ never analyzed Windy's ability to lift, carry, sit, stand, or walk, which is required under 20 C.F.R. § 416.945(b). See Dowling v. Comm'r, 986 F.3d 377, 387 (4th Cir. 2021) ("[A]n ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.945(b)."). Instead, the ALJ made general comments about Windy's abilities. The ALJ noted that "the objective record indicates [Windy] is able to sustain a range of work at the sedentary residual functional capacity" and did not cite to

9

the record. R. 21. The ALJ supported this finding with Windy's abilities in "maintaining personal care, retaining the ability to drive and shop, socializing with family, attending church, and adequate capacity for following direction, getting along with others, and sustaining tasks." Id. But, the ALJ did not discuss how Windy's pain that began in her back and radiated into other extremities or her limited range of motion and tenderness, R. 303, 328, 363, 367, 376, 384, 494, 504, 525, 530, 542, 620, 621, would impact her ability to perform job-related tasks. Additionally, while the ALJ noted that Windy "testified she is unable to go outside her home alone, requiring use of a wheelchair and assistance from her husband with all activities[;] . . . she cannot sustain standing, walking, sitting for long periods; is unable to lean towards the left due to back pain and sciatica; and, is restricted in daily activities due to her chronic symptoms," he never discussed how he considered this testimony in his RFC finding. R. 19.

　　The ALJ also did not point to any specific medical records that would support his RFC. The ALJ generally notes that "[m]edical examinations by provider[s] further show no acute musculoskeletal restrictions, diabetic or neuropathy related complications, and no acute pulmonary limitations or symptomology" and cites to Exhibits 1F, 2F, 4F through 7F, 9F, 11F through 15F, 19F, and 20F. R. 23. The ALJ pointed to fourteen exhibits in the record, but he never explains how these records support his conclusions. The ALJ is required to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189. Here, the ALJ did not do so because of vague citations to hundreds of pages of medical records with no explanation. See Rosado v. Berryhill, No. 4:16-CV-00173, 2018 WL 816578, at *11 (E.D. Va. Jan. 22, 2018), report and recommendation adopted, No. 4:16CV173, 2018 WL 813891 (E.D. Va. Feb. 9, 2018) ("The ALJ's repeated citation to over two hundred and fifty pages of medical records as a whole to support the proposition that Plaintiff experienced improvement of his

impairments, as purportedly demonstrated in those records, falls far short of the Fourth Circuit's requirement of a clear demonstration."). The ALJ's minimal discussion is not enough to satisfy the standard as articulated in SSR 96-8p, which requires the ALJ to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform. See Monroe, 826 F.3d at 189 ("We have held that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling[.]") (internal quotations omitted). Accordingly, the ALJ did not adequately discuss Windy's specific abilities or address how Windy's impairments were addressed by her RFC.

Additionally, the ALJ did not consider the conflicting opinions from several doctors as required by SSR 96-8p. Specifically, Drs. Godwin and Bristow concluded that Windy could lift/carry 20 pounds occasionally and 10 pounds frequently and could sit for six out of eight hours. R. 78–79, 93–94. Drs. Card and Raju found that Windy could never lift/carry any weight and could sit for less than two. R. 729, 731. The ALJ concluded that Windy could perform sedentary work but did not explain what portions of the medical assessments he adopted in his RFC and failed to explain where his RFC came from. R. 18; see also Linares v. Colvin, No. 5:14-CV-00120, 2015 WL 4389533, at *8 (W.D.N.C. July 17, 2015) (finding remand appropriate where an ALJ did not "explain what portions, if any, of the State agency assessments he credited in his RFC" and "failed to explain where his findings came from"). The representative occupations given by the ALJ would require that Windy be able to lift/carry up to 10 pounds occasionally and sit most of the time. See 20 C.F.R. § 404.1567; 209.587-010 Addresser, DICOT 209.587-010; 726.684-110 Touch-up Screener, Printed Circuit Board

11

Assembly, DICOT 726.684-110; 713.687-018 Final Assembler, DICOT 713.687-018. However, none of the medical opinions concluded that Windy could perform work with these specific limitations. The only acknowledgment the ALJ makes about the medical opinions is to state whether he finds them persuasive or not, and he finds none of the opinions fully persuasive. R. 22–23. This cursory review of the medical opinions and lack of explanation as to how the ALJ resolved conflicting evidence is not enough to satisfy SSR 96-8p, which requires the ALJ to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. Accordingly, the ALJ did not adequately discuss the conflicting medical opinions and how they relate to Windy's RFC.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. However, here, like in Mascio, this Court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637. In this case, "the ALJ [ ] determined what functions he believes [Windy] can perform, but his opinion is sorely lacking in the analysis needed . . . to review meaningfully those conclusions." Id. at 636–37. Accordingly, I conclude that the ALJ's decision regarding Windy's RFC is not supported by substantial evidence.[7]

## CONCLUSION

It is **RECOMMENDED** that an order be entered **DENYING** the Commissioner's

---

[7] Because I find that remand is warranted based on the ALJ's failure to complete a proper function-by-function analysis, Windy's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

motion for summary judgment, **GRANTING in part** Plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days.  Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered:  January 5, 2023

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge